UNITED STATES

v.

**Second Lieutenant Joann C. NEWAK,
167–38–0452 FV, United States
Air Force.**

ACM 23544 (f rev).

U.S. Air Force Court of Military Review.

Sentence Adjudged 11 March 1987.

Decided 16 Oct. 1987.

Appellate Counsel for the Appellant: Faith A. Seidenberg, Esq., Syracuse, New York; Louis P. Font, Cambridge, Massachusetts; Colonel Leo L. Sergi and Major Alexander S. Nicholas.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

## DECISION UPON FURTHER REVIEW

HODGSON, Chief Judge:

In our initial review of this record of trial we affirmed Second Lieutenant Newak's conviction for various drug offenses, sodomy with an enlisted woman and conduct unbecoming an officer with yet another enlisted woman. *United States v. Newak,* 15 M.J. 541 (A.F.C.M.R.1982).

She appealed our affirmance of her conviction arguing that she was denied effective assistance of counsel and due process of law when her appointed military counsel represented both her and an enlisted woman, Airman Lynne Peelman, with whom she allegedly had sexual relations and who subsequently pleaded guilty and became the

chief prosecution witness against her on a number of charges.

The Court of Military Appeals found merit in this argument and concluded that the joint representation of both her and Peelman by the same counsel was improper. The Court held, therefore, that the testimony of Peelman together with any evidence or information derived therefrom was tainted and should not have been admitted in evidence at the trial. Accordingly, it set aside those allegations in which Peelman's testimony was the only evidence of the appellant's guilt or such strong evidence that the prejudicial effect was apparent.[1] *United States v. Newak*, 24 M.J. 238 (C.M.A.1987).

Although the affected charges were set aside, the Government was given permission to pursue them again if alternative untainted evidence were available. Our review of the record and the pretrial investigation convinces us that no such evidence exists. We are aware that Judge Cox, who concurred in the result, suggested that Peelman could still testify if the trial judge at the second hearing was satisfied that no communication from the appellant was transmitted through appointed counsel to Peelman. This is not, in our view, a viable course of action, particularly in light of the requirement that Peelman must testify *without* a grant of immunity. The passage of time and judicial economy both dictate that the alleged sodomy offenses [Specifications of the Additional Charge], and the alleged drug offenses [Specification of Charge II and Specification of Charge III] be dismissed, which we so do.

While the remaining offenses, i.e., use and possession of marijuana and the attempted possession of amphetamine and conduct unbecoming an officer, were not set aside by the Court of Military Appeals, it expressed a concern that some "spillover" might have taken place from the tainted offenses to the remaining guilty findings. They suggested that on remand, we might wish to consider this possibility and if we find that such "spillover" exists, formulate the appropriate remedy.

■ The issue presented to us appears to be one of first impression as we are unaware of any military decision touching upon "tainted evidence" derived from an improper joint representation of two parties involved in the same offense. However, there does appear to be an analogy between the situation at bar and the Government's ability to establish that it made no improper use of an accused's immunized testimony. *See United States v. Lucas*, 25 M.J. 9 (C.M.A.1987). The burden in this regard lies with the Government to show that it "had an independent, legitimate source for the disputed evidence." *United States v. Gardner*, 18 M.J. 612 (A.F.C.M.R.1984); *aff'd* 22 M.J. 28 (C.M.A. 1986). This, of course, is a factual determination to be gleaned from the record of trial and the allied papers. *United States v. Gardner*, 22 M.J. 28 (C.M.A.1986). If this can be done there is no bar to the Government using the evidence.

The evidence as to the remaining offenses is based on the testimony of Senior Airman Donna Ryan who began assisting the Office of Special Investigations (OSI) as an informant in June 1981. Ryan testified that during a softball game on 17 June 1981, the appellant suggested that she (Ryan) was "bisexual" and that the two of them might wish to go to a homosexual bar that the appellant knew. Later, the appellant put her arms around Ryan's neck, kissed her and said she loved her. Shortly thereafter Ryan reported the incident to the OSI and gave them a statement regarding it. Ryan also stated at trial that on 10 July 1981, she saw the appellant in possession of marijuana and what the appellant said was amphetamine. She also saw her use marijuana. The marijuana cigarette and supposed amphetamine tablets the appellant gave her were released to the OSI who forwarded the items to the Army testing laboratory at Ft. Gordon, Georgia for analysis. The laboratory report which was

---

1. Peelman's testimony was the basis of the sodomy allegations [Specifications of the Additional Charge] and the drug offenses involving marijuana and amphetamine [Specification 3 of Charge III and the Specification of Charge II].

returned on 17 August indicated the cigarette contained marijuana, but the tablets did not contain a controlled substance.

■ The trial transcript and the investigatory file clearly establish that the Government had an "independent, legitimate source" i.e., Ryan, for the evidence used to convict the appellant of the remaining offenses. The evidence was developed and known to the Government long before either Captain Powers or Captain Smith, the attorneys whose joint representation of the appellant and Peelman denied the appellant the effective assistance of counsel, became involved in the case. The investigatory file in the allied papers indicate that the appellant's criminal activities came to light as the result of Ryan's connection with the OSI and not the other way around. The exact date of Powers' appointment as counsel to both the appellant and Peelman is not known, but he stated it was "In the summer of 1981." Captain Smith, however, identifies 8 September as the first time he met the appellant and Peelman and entered into an attorney-client relationship with them.

On the facts just reviewed we see no basis to find that the evidence relating to the dismissed guilty findings "directly tainted" the remaining charges. The Government was aware of the appellant's misconduct as to the remaining offenses before either Powers or Smith entered the case. We find no evidence of a "spillover" of tainted evidence from the dismissed allegations to those remaining. *Accord United States v. Lucas, supra.*

■ We now address the sufficiency of the evidence on the remaining offenses. Ryan stated that the appellant implied that she (Ryan) was sexually oriented toward both sexes and suggested that both of them go to a homosexual bar. Later, the appellant kissed her and said "she loved (her)." Approximately three weeks after the incident described above, Ryan saw the appellant use and possess marijuana and attempt to possess amphetamine.

Ryan's testimony, if believed by the military judge who was sitting as the factfinder, supports a conviction for conduct unbecoming an officer. Because of the special status afforded officers, they are held to a higher standard of conduct. *United States v. Tedder,* 24 M.J. 176 (C.M.A.1987). Clearly, the appellant's conduct compromised her status as an officer and mortally wounded the confidence and respect that others have for authority of the officer corps. *See United States v. Van Steenwyk,* 21 M.J. 795 (N.M.C.M.R.1985).

Additionally, Ryan stated she was familiar with the odor and appearance of marijuana and the substance she saw the appellant possess and use was marijuana. Her testimony was bolstered by the physical evidence, i.e., marijuana cigarette and the two supposed amphetamine tablets. This evidence, if believed, is sufficient to establish the gravamen of the offense.

In summary, the appellant's conviction of the remaining offense turns on the credibility of the witnesses. In reviewing the sufficiency of the evidence to sustain a conviction we are not free to overturn a lower court's finding of guilty if there is "some legal and competent evidence from which a court-martial may find or infer beyond a reasonable doubt those facts required by law for conviction." *United States v. Odegard,* 25 M.J. 140 (C.M.A.1987) and cases cited therein; Article 66(c), U.C.M.J., 10 U.S.C. § 866(c).

We have examined the record of trial and like the trial court, we are convinced beyond a reasonable doubt that the appellant is guilty of the offenses alleged.

Except for those offenses we earlier dismissed, those remaining are affirmed. The sentence is set aside. A rehearing on sentence may be ordered.

Senior Judge FORAY and Judge HOLTE concur.